LAW OFFICE OF STEPHEN T. CARPENITO
BY:   STEPHEN T. CARPENITO, ESQUIRE
        ATTORNEY ID# 68860


200 MAHANTONGO STREET, SUITE 44
P.O. BOX 570
POTTSVILLE, PA 17901
TELE: (570) 516-9265
FACS: (570) 516-9267

| | |
|---|---|
| **Randal Gordon and Nicole Bobb, h/w**, <br>              **PLAINTIFFS,** | **:** IN THE UNITED STATES DISTRICT COURT <br> **:**  OF PENNSYLVANIA, MIDDLE DISTRTICT <br> **:** |
| **VS.** | **:**          Docket No:  4:25-CV-1875 <br> **:** |
| **TIMOTHY N. TURNER, RACHEL** <br> **TURNER, THE COUP AGENCY, INC.,** <br> **d/b/a THE COUP AGENCY, STEPHANIE** <br> **KROLIKOWSKI, VILLAGER REALTY,** <br> **INC., KELLY SEIGEL, GEISER** <br> **ENTERPRISES, LLC, MIKE SWAREY,** <br> **BUFFALO TOWNSHIP BOARD OF** <br> **SUPERVISORS, PAUL HAINES** <br> **(Supervisor), TODD OBERDORF** <br> **(Supervisor) and GLENN** <br> **TROUP(Supervisor) BUFFALO** <br> **TOWNSHIP, CENTRAL KEYSTONE** <br> **COG, RODNEY D. NEITZ,** <br><br>              **DEFENDANTS.** | **:** <br> **:** <br> **:** <br> **:**          JURY TRIAL DEMANDED <br> **:** <br> **:** <br> **:** <br> **:** <br> **:** <br> **:** <br> **:** <br> **:** <br> **:** <br> **:** <br> **:** |


**COMPLAINT**

**AND NOW**, comes the Plaintiffs, Randal Gordon and Nicole Bobb, h/w, by and through their

Counsel, Stephen T. Carpenito, Esquire, and does file this Complaint and in support thereof avers as

follows:

1. Plaintiffs are adult individuals who at all relevant times were spouses and reside in Union County,

    Pennsylvania.

2. Defendant, Buffalo Township ("hereinafter "Township"), is a duly organized municipality with a business address of 2115 Strickler Road, Mifflinburg, PA 17844.

3. Defendant, Buffalo Township Board of Supervisors (hereinafter "Board"), is a duly organized Board of Supervisors with an address of 2115 Strickler Road, Mifflinburg, PA 17844.

4. Defendant, Paul Haines is and was a Supervisor for Buffalo Township.

5. Defendant, Todd Oberdorf, is and was a Supervisor for Buffalo Township.

6. Defendant, Glenn Troup, is and was a Supervisor for Buffalo Township.

7. Central Keystone COG (hereinafter "CKCOG") is a duly organized Council of Government retained by Buffalo Township to perform certain inspections for buildings and land development with an office of 1610 Industrial Blvd., #440A, Lewisburg, PA 17837.

8. Defendant, Timothy N. Turner (hereinafter "Turner") is an adult individual who resides at 832 Chestnut Street, Mifflinburg, PA 17844.

9. Defendant, Rachel Turner, is an adult individual who is the wife of Defendant, Timothy N. Turner and resides at 832 Chestnut Street, Mifflinburg, PA 17844.

10. The Coup Agency, Inc. (hereinafter "Coup"), is a real estate brokerage firm duly organized under the laws of the Commonwealth of Pennsylvania with a business address of 49 Broadway Street, Milton, PA 17847.

11. Defendant, Stephanie Krolikowski ("hereinafter "Krolikowski"), is an adult individual and a licensed real estate agent with a business office of 49 Broadway Street, Milton, PA 17847.

12. The Defendant, Villager Realty, Inc. (hereinafter "Villager"), is a real estate brokerage firm duly organized under the laws of the Commonwealth of Pennsylvania with a business address of 521 N. Derr Drive, Lewisburg, PA 17837.

13. The Defendant, Kelly Seigel (hereinafter "Seigel"), is an adult individual and a licensed real estate agent with a business office at 521 N. Derr Drive, Lewisburg, PA 17837.

14. The Defendant, Geiser Enterprises, LLC (hereinafter "Geiser"), is a duly organized limited liability company with an address of 208 Swarey Road, Mifflinburg, PA 17844.

15. Defendant, Mike Swarey (hereinafter "Swarey"), is an adult individual with an address of 208 Swarey Road, Mifflinburg, PA 17844.

16. Defendant, Rodney Neitz (hereinafter "Neitz"), is an adult individual with a business address of 1610 Industrial Blvd., #440A, Lewisburg, PA 17837.

**JURISDICTION**

17. Plaintiff incorporates by reference hereto all preceding paragraphs as if the same were more fully set forth here at length.

18. This is a civil action under 42 U.S.C. Section 1983, seeking damages and injunctive relief against the Defendants committing acts under the color of law, with the intent and for the purpose of depriving Plaintiff of rights under the Constitution and laws of the United States.

19. This Honorable Court has jurisdiction in this matter pursuant to 28 U.S.C. Section 42 U.S.C. Section 1983 as the Defendants are governmental actors and the Plaintiffs are citizens of the United States.

20. This Honorable Court has ancillary jurisdiction over the state tort actions as the relevant facts are similar to the claims under 42 U.S.C. Section 1983.

21. The Defendants and Plaintiff both have an address in Union County, Commonwealth of Pennsylvania and all acts and omissions occurred in Union County, Commonwealth of Pennsylvania.

OPERATIVE FACTS

22.  Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs and incorporates those allegations herein.

23. The Defendant, Buffalo Township, as a municipality had jurisdiction and authority as to all subdivisions, land development, zoning laws, code enforcement, inspections and permitting taking place in Buffalo Township.

24. The Defendants, Board of Supervisors, as municipal government had authority and control of all actions taken by Buffalo Township in regard to subdivisions, land development, zoning laws, code enforcement, inspections and permitting taking place in Buffalo Township

25. The Defendants, Township, by and through the Board retained and/or hired CKCOG and Neitz to perform various code and zoning inspections for any subdivisions, land development, storm water management and other municipal services relating to real property.

26. The Defendant, Turner and Rachel Turner were owners of a certain property located on or near Church Road, Mifflinburg, Buffalo Township, Pennsylvania (hereinafter "Parcel").

27. The Defendants, Turner and Rachel Turner, as owners of the Development intended to sub-divide and develop a residential community. (hereinafter "Development").

28. On or about May 14, 2019, the Defendants, Turner and Rachel Turner, submitted sub-division plans containing certain storm water management narrative (hereinafter "Plans").

29. The Plans were eventually approved by the Township and Board on or about November 4, 2019, and became final plans.

30. On or about October 28, 2019, the Defendant, Turner, Township and Board entered into a certain Storm Water Management System Maintenance Agreement ("Storm Water Agreement").

31. The Defendant, Turner and Rachel Turner, then began construction of the Development remaining subject to the inspection and authority of the Defendants, Township, Board, CKCOG and Neitz.

32. The Defendants, Turner and Rachel Turner, began to sell individual lots to various customers for purposes of constructing residences.

33. The Defendant, Turner and Rachel Turner, when selling the residential lots failed to adhere to the Plans and Storm Water Agreement.

34. Each house that was constructed was issued a building permit by the Defendants, Township and Board, after an alleged inspection by CKCOG and Neitz.

35. However, the Defendants, Township, Board, CKCOG and Neitz were aware at all times that Turner and Rachel Turner had not complied with the Plans and Storm Water Agreements.

36. On or about January 10, 2024, the Plaintiff's purchase the property known as 2994 Church Road (hereinafter "Premises"), which is located within the Development.

37. When the Plaintiff's purchased the Premises the Defendants, Coup, Krolikowski, Villager and Seigel, were the real estate brokers and agents responsible for marketing the Premises and other residential lots located in the Development.

38. The Defendants, Township, Board, CKCOG and Neitz, knew that the Development was flooding due to the failure of Turner and Rachel Turner to comply with the Plans and Storm Water Agreement.

39. The Defendants, Township, Board, CKCOG and Neitz had previously conducted inspections previous to the purchase of the Premises by Plaintiff and were aware of the violations committed by Turner and Rachel Turner.

40. The Defendants,  Township, Board, CKCOG and Neitz, knew at all times that the Premises would flood due to the failure of Turner and Rachel Turner to install the necessary storm water management systems required by the Plans and Storm Water Agreement.

41. The Defendants,  Township, Board, CKCOG and Neitz, had received numerous complaints from other owners in the Development of the flooding prior to Plaintiff's purchase of the Premises.

42. The Defendants,  Township, Board, CKCOG and Neitz, were aware of the flooding due to complaints of other property owners, their own inspections and/or visualization and upon information and belief inspections conducted by the Pennsylvania Department of Environmental Protection ("DEP") and/or other governmental agencies prior to the Plaintiff's purchase of the Premises.  Likewise, the Defendants were and are aware of the continuing violations by Defendants and have failed to act due to their political, financial and social interests.

43. Despite knowledge of the flooding and violations by Turner and Rachel Turner the Township, Board, CKCOG and Neitz did not alert, warn or otherwise advise the Plaintiffs of the flooding and defects with storm water management.

44. Despite knowledge of the flooding and violations by Turner and Rachel Turner the Township, Board, CKCOG and Neitz continued to issue building permits for  residential lots, including the Plaintiffs.

45. Despite knowledge of the flooding and violations by Turner and Rachel Turner the Township and Board have refused and/or failed to issue enforcement actions against Turner and Rachel Turner to force compliance with the Plans and Storm Water Agreement.

46. Despite knowledge of the flooding and violations by Turner and Rachel Turner the Township and Board have refused to utilize the Surety/Bond provided by Turner and Rachel Turner for assurance of his compliance with the Storm Water Agreement.

47. The Township, Board, CKCOG and Neitz have conspired with Turner and Rachel Turner due to certain friendship and other relationships (including political affiliation) to continue to issue building permits, including for construction of the Plaintiff's eventual home, despite knowing of the risk of flooding of the Plaintiff's home.  The motives of these Defendants included their friendship and relationship with Defendants, Geiser and Swarey.

48. The Defendants, Turner and Rachel Turner, hired, retained and/or contracted with Villager, Seigel, Coup and Krolikowski to market, show and sell the various residential lots and homes for sale.

49. However, when these Defendants acted in concert to market and sell the residential lots and homes they were aware that they had not complied with the requirements of the Plans and Storm Water Agreement.

50. As these Defendants marketed, showed and sold the various residential lots and homes they were aware that the Development was not fit for the construction of residential homes as a result of harmful and expected results of storm water.

51. At the time that these Defendants marketed the Premises to the Plaintiffs they were aware that the Development had flooded at various times prior to the sale.  This included flooding of the Plaintiff's home prior to their purchase of the same.

52. These Defendants failed to warn and/or disclose the flooding of the Development and the Premises.

53. The Defendants, Turner and Rachel Turner, hired, retained, and/or contracted with Defendants, Geiser and Swarey, to function as the exclusive builder of home upon the residential lots.

54. The Defendant, Geiser and Swarey, contracted with Defendants to construct the Plaintiff's home knowing that it would be marketed and sold.

55. The Defendants, Geiser and Swarey, were aware of the flooding and failure of Turner and Rachel Turner to provide for storm water management when they contracted to construct the Premises.

56. The Defendants, Geiser and Swarey, were aware that the Premises were not suitable for the construction of a home due to the flooding, drainage and elevation of the Premises.

57. The Defendants, Geiser and Swarey, had constructed other homes in the Development and were aware that those other homes had experienced flooding and water damage.

58. The Defendants, Geiser and Swarey, failed to inform the Plaintiffs of the risk of flooding and water damage to their home prior to purchase.

59. The Defendants, Geiser and Swarey, constructed the Plaintiffs' home in a substandard fashion, including failure to install appropriate safeguards against flooding and water damage.

60. The Defendants, Geiser and Swarey, knew that the Premises would flood and despite this knowledge failed to safely construct the Plaintiffs' home.

61. All Defendants were aware that the Development did not have appropriate storm water systems and that any home constructed thereon would flood and suffer water damage. Despite this knowledge the Defendants collectively hid this from the Plaintiffs due to the intent of depriving them of their Constitutionally protected rights and with a desire to harm or ignore the harm that Plaintiffs would suffer for their own financial and political gain.

62. The Plaintiffs home has flooded numerous times and has suffered significant damage. It has been rendered worthless as the home is defective and they cannot possibly sell due to the requirements of disclosure of flooding to any prospective purchaser.

63. The Plaintiffs have requested the Defendants, Township, Board, CKCOG and Neitz to institute enforcement actions against Turner and Rachel Turner, but they have refused for their own benefit and the direct intent to harm the Plaintiffs.

COUNT II

PLAINTIFFS VS. TOWNSHIP, BOARD, SUPERVISORS, CKCOG AND NEITZ

VIOLATION OF 5th and 14th AMENDMENTS

64. Plaintiffs incorporate by reference hereto the allegations made in all preceding paragraphs as if the same were more fully set forth here at length.

65. The Defendant, Township, is a governmental body that is bound by the United States and the rights of the Plaintiff to Procedural and Substantive Due Process.

66. The Defendants have utilized and/or enforced (or failed) the laws of the Commonwealth of Pennsylvania and Township Law against the Plaintiffs in an attempt to deprive them of life, liberty and the pursuit of happiness.

67. Specifically, the Defendants have conspired with the other Defendants, Turner, Rachel Turner, Geiser and Swarey, to issue permits in a Development they knew was defective and unlawful.

68. The Defendants have conspired with the other Defendants, Turner, Rachel Turner, Geiser and Swarey, by refusing to enforce the laws of the Commonwealth of Pennsylvania and their own zoning/SALDO/Storm water and other laws due to their continued conspiracy.

69. The Defendants knew that the Co-Defendants, Turner and Rachel Turner, were violating the laws but still issued permits to construct the home due to their continued conspiracy for their own benefit.

70. The Defendants have purposely ignored the laws they swore to enforce for their own benefit and to the detriment of the Plaintiffs and other residents in the Development.

71. The Defendants have not taken any action against Co-Defendants, Turner and Rachel Turner, for their continued violation of the various Township rules, laws and regulations.

72. The Defendants' acts and omission were done in an arbitrary and capricious manner with the direct and indirect intent to harm the Plaintiffs and other individuals residing in the Development.

73. Despite the repeated pleas for help the Defendants have refused to enforce the laws they swore to uphold for their own benefit and based upon the conspiracy between themselves and Co-Defendants.

74. As a direct result of the deprivation of their Constitutional Rights the Plaintiffs have suffered the following injuries and damages;

  a.  Past, present and future physical injuries and health problems;

  b.  Past, present and future mental anguish;

  c.  Past, present and future financial harm;

  d.  Loss of enjoyment of life, liberty and pursuit of happiness;

  e.  Loss of their home;

  f.  Loss of the Premises;

  g.  Legal fees, costs and expenses;

  h.  Such other damages as this Honorable Court shall recognize.

75. The actions of the Defendants were done with a wanton disregard for the wellbeing of the Plaintiffs and with the direct intent to harm them for the Defendants' own benefit.

WHEREFORE, Plaintiffs demand judgment in their favor in an amount to proven at trial and in excess of $150,000.00, together with pre- and post-judgment interest, punitive damages, attorney's fees, costs and such other relief as this Court may deem just and proper.

## COUNT II

## PLAINTIFFS VS. TURNER AND RACHEL TURNER

## VIOLATION OF THE PA REAL ESTATE DISCLOSURE LAW

## 68 P.S. SECTION 7301, ET SEQ.

76. Plaintiffs incorporate by reference hereto all allegations made in the preceding paragraphs as if more fully set forth here at length.

77. As sellers of residential premises/property the Defendants were required by law (68 P.S. Section 7301, et seq.) to disclose any known defects to the Premises.

78. The Development was pre-existing when the Plaintiffs purchased the Premises and as a result the Defendants had a duty to disclose all known defects.

79. The Defendants, Turner and Rachel Turner, were aware that the storm water management plan was not followed and that the Development, including the Premises, had flooded numerous times prior to Plaintiffs purchasing the property.

80. The Defendants knew that they had violated the terms of the Plans and the Storm Water Agreement but failed to disclose the same to the Plaintiffs.

81. The Defendants knew that the Premises and other homes in the Development had flooded and experienced water damage but failed to disclose the same to the Plaintiffs.

82. The Defendants lied to the Plaintiffs and stated that they had full approval for the Development and that the Development and Premises were in compliance with the approved Plans.

83. The Plaintiffs relied upon the non-disclosure and outright misrepresentation by the Defendants in the decision to purchase the Premises.

84. As a direct result of the deprivation of their Constitutional Rights the Plaintiffs have suffered the following injuries and damages;

    a. Past, present and future physical injuries and health problems;

    b. Past, present and future mental anguish;

    c. Past, present and future financial harm;

    d. Loss of enjoyment of life, liberty and pursuit of happiness;

    e. Loss of their home;

    f. Loss of the Premises;

    g. Legal fees, costs and expenses;

    h. Such other damages as this Honorable Court shall recognize.

85. The actions of the Defendants were done with a wanton disregard for the wellbeing of the Plaintiffs and with the direct intent to harm them for the Defendants' own benefit.

WHEREFORE, Plaintiffs demand judgment in their favor in an amount to proven at trial and in excess of $150,000.00, together with pre- and post-judgment interest, punitive damages, attorney's fees, costs and such other relief as this Court may deem just and proper.

## COUNT III

## PLAINTIFFS VS. TURNER AND RACHEL TURNER

## BREACH OF CONTRACT

86. Plaintiffs incorporate by reference hereto the allegations of all preceding paragraphs as if the same were more fully set forth here at length.

87. The Plaintiffs and Defendants entered into a written contract for the sale of the Premises.

88. The terms of the Contract required the Defendants to sell the Premises in such a fashion that it was in compliance with the terms of the Plans.

89. The terms of the Contract required the Defendants to sell the Premises which they represented was a lawful building lot for a residential home.

90. The Defendants breached the Contract by;

    a.  Committing active fraud and selling the Premises in a defective condition;

    b.  Failing to sell the Premises that was in compliance with the Plans and other laws;

    c.  Failing to provide proper consideration to the Plaintiffs by turning over the Premises in a defective condition.

91. As a direct result of the deprivation of their Constitutional Rights the Plaintiffs have suffered the following injuries and damages;

    a.  Past, present and future physical injuries and health problems;

    b.  Past, present and future mental anguish;

    c.  Past, present and future financial harm;

    d.  Loss of enjoyment of life, liberty and pursuit of happiness;

    e.  Loss of their home;

    f.  Loss of the Premises;

    g.  Legal fees, costs and expenses;

    h.  Such other damages as this Honorable Court shall recognize.

92. The actions of the Defendants were done with a wanton disregard for the wellbeing of the Plaintiffs and with the direct intent to harm them for the Defendants' own benefit.

WHEREFORE, Plaintiffs demand judgment in their favor in an amount to proven at trial and in excess of $150,000.00, together with pre- and post-judgment interest, costs and such other relief as this Court may deem just and proper.

**COUNT IV**

**PLAINTIFFS VS. TURNER, RACHEL TURNER, GEISER, SWAREY, VILLAGER, COUP, KROLIKOWSKI AND SEIGEL**

**FRAUD (MISREPRESENTATION)**

93. The Plaintiffs incorporate by reference hereto the allegations made in all preceding paragraphs as if the same were more fully set forth here at length.

94. All Defendants knew that the Development and Premises were defective and not in compliance with the Plans, Storm Water Agreement and local and state law.

95. All Defendants were aware that the Development had flooded prior to showing, marketing and selling the Premises to the Plaintiffs.

96. All Defendants were aware that the Premises and other homes in the Development had experienced flooding prior to the showing, marketing and sale of the Premises to the Plaintiffs.

97. All Defendants were aware that the Premises would flood but failed to tell the Plaintiffs.

98. All Defendants were aware that the Premises would flood but actively lied and misrepresented to the Plaintiffs that the Premises were fit.

99. All Defendants were motivated by financial gain when they actively misrepresented and concealed the facts as set forth above.

100. All fraud occurred from the date that the Defendants began to market and show the Premises to the Plaintiffs until the sale of the Premises.

101. The Defendants were all aware that Co-Defendants, Geiser and Swarey, were incapable and did not possess the skill necessary to properly construct the Plaintiffs' home.

102.    The Defendants were all aware that Co-Defendants, Geiser and Swarey, would construct the home in a defective manner and not provide adequate protections against flood and water damage.

103.    The Defendants knew that Co-Defendants, Geiser and Swarey, would not construct the home in a way to prevent flooding and water damage.

104.    The Plaintiffs justifiably relied upon the lies and misrepresentations.

105.    As a direct result of the deprivation of their Constitutional Rights the Plaintiffs have suffered the following injuries and damages;

   a.   Past, present and future physical injuries and health problems;

   b.   Past, present and future mental anguish;

   c.   Past, present and future financial harm;

   d.   Loss of enjoyment of life, liberty and pursuit of happiness;

   e.   Loss of their home;

   f.   Loss of the Premises;

   g.   Legal fees, costs and expenses;

   h.   Such other damages as this Honorable Court shall recognize.

   i.   The actions of the Defendants were done with a wanton disregard for the wellbeing of the Plaintiffs and with the direct intent to harm them for the Defendants' own benefit.

WHEREFORE, Plaintiffs demand judgment in their favor in an amount to proven at trial and in excess of $150,000.00, together with pre- and post-judgment interest, punitive damages, attorney's fees, costs and such other relief as this Court may deem just and proper.

## COUNT V

## PLAINTIFFS VS. COUP, KROLIKOWSKI, VILLAGER and SEIGEL

## BREACH OF FIDUCIARY DUTY

106.     Plaintiffs incorporate by reference hereto the allegations made in all preceding paragraphs as if the same were more fully set forth here at length.

107.     The Defendants were all licensed real estate professionals who owed a fiduciary duty to the Plaintiffs to inform them prior to purchasing the Premises of the known defects of the Development and Premises.

108.     The Defendants were all licensed real estate professionals who owed a fiduciary duty to the Plaintiffs to inform them that Co-Defendants, Geiser and Swarey, were unqualified and improper contractors and that the Premises was not properly built.

109.     The Defendants breached their fiduciary duty to the Plaintiffs by misrepresenting these material facts and actively lying to the Plaintiffs.

110.     As a direct result of the deprivation of their Constitutional Rights the Plaintiffs have suffered the following injuries and damages;

   a.   Past, present and future physical injuries and health problems;

   b.   Past, present and future mental anguish;

   c.   Past, present and future financial harm;

   d.   Loss of enjoyment of life, liberty and pursuit of happiness;

   e.   Loss of their home;

   f.   Loss of the Premises;

   g.   Legal fees, costs and expenses;

   h.   Such other damages as this Honorable Court shall recognize.

111.     The actions of the Defendants were done with a wanton disregard for the wellbeing of the Plaintiffs and with the direct intent to harm them for the Defendants' own benefit.

WHEREFORE, Plaintiffs demand judgment in their favor in an amount to proven at trial and in excess of $150,000.00, together with pre- and post-judgment interest, punitive damages, attorney's fees, costs and such other relief as this Court may deem just and proper.

## COUNT VI

## PLAINTIFFS VS. ALL DEFENDANTS

## CIVIL CONSPIRACY TO DEFRAUD

112.     Plaintiff incorporates by reference hereto the allegations made in all preceding paragraphs as if the same were more fully set forth here at length.

113.     All Defendants knew of the various defects with the Development and Premises.

114.     All Defendants were motivated by their own financial gain and other self-serving interests with the intent of harming the Plaintiffs when they showed they marketed, sold and constructed the Premises to the Plaintiff.

115.     All Defendants were motivated by their own financial gain and other self-serving interests with the intent of harming the Plaintiffs when they showed, marketed, sold and constructed the Premises to the Plaintiffs.

116.     The Defendants actively or tacitly agreed to defraud the Plaintiffs for their own financial gain and other self-serving interests with the intent of harming the Plaintiffs.

117.     As a direct result of the deprivation of their Constitutional Rights the Plaintiffs have suffered the following injuries and damages;

    a.  Past, present and future physical injuries and health problems;

b.  Past, present and future mental anguish;

c.  Past, present and future financial harm;

d.  Loss of enjoyment of life, liberty and pursuit of happiness;

e.  Loss of their home;

f.  Loss of the Premises;

g.  Legal fees, costs and expenses;

h.  Such other damages as this Honorable Court shall recognize.

118.    The actions of the Defendants were done with a wanton disregard for the wellbeing of the Plaintiffs and with the direct intent to harm them for the Defendants' own benefit.

WHEREFORE, Plaintiffs demand judgment in their favor in an amount to proven at trial and in excess of $150,000.00, together with pre- and post-judgment interest, costs and such other relief as this Court may deem just and proper.

## COUNT VII

### PLAINTIFFS VS. GEISER AND SWAREY

119.    The Plaintiffs incorporate by reference hereto the allegations made in all preceding paragraphs as if the same were more fully set forth here at length.

120.    The Defendants contracted with the other Defendants to construct a residential home upon the Premises.

121.    The Defendants were aware that the home would be marketed and sold for the benefit of a third party.

122.    The Defendants had a duty to the Plaintiffs under the doctrine of third-party beneficiary.

123.    The Defendant breached that duty by constructing the home in a defective manner.

124.    The Defects of the home and Premises include but are not limited to the following;

    a.  Failing to install appropriate water systems to prevent flooding, mold and other water damage;

    b.  Failing to install appropriate drainage systems to remove excess water;

    c.  Failing to properly grade the Premises so that water would flow away from the home;

    d.  Failing to install the foundation in an appropriate manner to avoid water and other damage;

    e.  Failing to install appropriate radon removal and detection systems;

    f.  Constructing the home knowing that it would flood due to Co-Defendants' failure to adhere to the Plans, Storm Water Agreement and applicable laws;

    g.  Failing to properly install vapor barriers in the home;

    h.  Failing to properly install all gutters and down spouts;

    i.  Failing to comply with the appropriate codes applicable to new home construction;

    j.  Otherwise failing to construct the home in a workmanlike manner;

    k.  Failing to possess the necessary experience and qualifications to construct a residence.

    l.  Such other defects to be discovered upon inspection.

WHEREFORE, Plaintiffs seek judgment in their favor and against the Defendants, together with pre- and post-judgment interest, costs and such other relief that this Court deems just and proper.

## COUNT VII

## PLAINTIFF VS. TOWNSHIP AND BOARD

## MANDAMUS ACTION

125.    Plaintiffs incorporate by reference hereto the allegations of all preceding paragraphs as if the same were more fully set forth here at length.

126.    Plaintiffs are entitled to mandamus pursuant to Pa.R.C.P. 1093 and 1095 and under 42 Pa.C.S. 931, et seq.

127.    The Defendants entered into a certain Storm Water Agreement with the Defendant, Turner.

128.    Pursuant to the Agreement the Defendant, Turner, was required to post bond to ensure that he constructs all storm water systems set forth in the Plans and associated documents.

129.    The Defendant, Turner, has failed to comply with the Plans and Storm Wate Agreement.

130.    Pursuant to the Storm Water Agreement and the Township's SALDO they have the mandatory duty to enforce Turner to construct the storm water systems.

131.    Defendant, Turner, has failed to comply with the terms and conditions of the Plans, SALDO and Storm Water Agreement.

132.    The Defendants have failed to enforce the laws and should have cited Turner for failure to construct the storm water system.

133.    The Defendants have failed to exercise their mandatory obligation to call the bond and construct the storm water system at the Development.

134.    A writ of mandamus compels a government's performance of a mandatory and ministerial duty where a plaintiff has "a clear legal right". Capinski v. Upper Pottsgrove Twp., 164 A.3d 601, 606 (Pa.Commw. Ct. 2107).

PRAYER FOR RELIEF. WHEREFORE, the above-named Plaintiff requests this Honorable Court to (1) Issue an Order or Writ of Mandamus compelling the Defendants to institute enforcement action against Turner for failure to comply with the Plans, SALDO, Storm Water laws and Storm Water Agreement; Issue an Order or Writ of Mandamus compelling the Defendants to enforce the Storm Water Agreement and utilize the Bond to construct the storm water system.


Law Office of Stephen T. Carpenito

*Stephen T. Carpenito, Esquire*

By:    _____

Stephen T. Carpenito, Esquire
Attorney for Plaintiff

Date:  October 6, 2025