IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RANDAL GORDON and NICOLE BOBB, H/W,<br><br>Plaintiffs,<br><br>v.<br><br>TIMOTHY N. TURNER, *et al.*,<br><br>Defendants. | No. 4:25-CV-01875<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**APRIL 22, 2026**

## I.   BACKGROUND

This case arises from the purchase of a home in a flood plain. On October 7, 2025, Plaintiffs, Randal Gordon and Nicole Bobb, (collectively "Plaintiffs"), filed an eight-count complaint against fifteen separate defendants related to alleged water damage that the home suffered.[1]  On November 24, 2025, Plaintiffs filed an amended complaint that, among other things, added an additional claim.[2]

---

[1]   Doc. 1 (Original Compl.).

[2]   *See* Doc. 53 (First Am. Compl.). It should be noted that there are errors in the numbering of the counts listed in both the original complaint and amended complaint. *See* Doc. 1; Doc 53. For the sake of clarity, in this opinion, along with the subsequent order, I will refer to the counts of the amended complaint in the order that they appear in that complaint—irrespective of the roman numeral labeling the claim. This leads to "Count VIII" being the mandamus action and "Count IX" being the breach of contract claim against the Coup Agency, Inc. and Stephanie Krolikowski. *See id.*

As of December 22, 2025, there have been three motions to dismiss filed in this case pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. They have been filed by: (1) Buffalo Township, the Buffalo Township Board of Supervisors, Paul Haines, Todd Oberdorf, and Glenn Troup (collectively, "Township Defendants"),[3] (2) Central Keystone Council of Government and Rodney D. Neitz (collectively, "CKCOG and Neitz"),[4] and (3) Timothy N. Turner and Rachael Turner[5] (collectively, "the Turners").[6] These motions are now ripe for disposition; for the reasons that follow, each is granted in part and denied in part.

## II.   DISCUSSION

### A.   Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[7] and *Ashcroft v. Iqbal*,[8] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[9] The United States Court of Appeals for the Third Circuit has instructed

---

[3]   Doc. 58.
[4]   Doc. 59.
[5]   The Court acknowledges that the correct spelling of Ms. Turner's name is "Rachael" and, as such, will refer to any mentions of "Rachel" in the amended complaint to refer to the correctly named Defendant. *See* Doc 68, at 1 n.1.
[6]   Doc. 67.
[7]   550 U.S. 544 (2007).
[8]   556 U.S. 662 (2009).
[9]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[10]

### B. Facts Alleged in the Amended Complaint

The facts alleged in the amended complaint, which this Court must accept as true for the purposes of this motion, are as follows.[11]

This case is based on the use of a parcel of land in Mifflinburg, Pennsylvania that was owned by the Turners.[12] This property was located in a flood plain as designated by the Union County Conservation District, the Pennsylvania Department of Environmental Protection, and the Army Corp of Engineers.[13] The couple's intention was to sub-divide the parcel and develop it as a residential community.[14] Around May 14, 2019, the Turners submitted subdivision proposals

---

[10]  *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

[11]  As a procedural matter, the Court notes that the various defendants that have brought the instant motions to dismiss have alleged various facts that are obtuse to those stated by Plaintiffs. However, "[t]he proper place to resolve factual disputes is not on a motion to dismiss." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022). Therefore, the Court will only consider the allegations of the Plaintiffs in the amended complaint and will discard the alternative facts alleged by these defendants.

[12]  *See* Doc. 53 ¶ 31.

[13]  *Id.* at 114.

[14]  *Id.* ¶ 32.

to local officials, which included a storm water management plan.[15] While Mr. Turner seems to have led the operation, Ms. Turner actively worked with her husband on the property at issue and the entire construction and development of this parcel—along with other construction projects.[16] The overall proposal was eventually approved by Buffalo Township ("the Township")—the municipality where the parcel was located—and the Township's Board of Supervisors ("the Board") on November 4, 2019.[17] Additionally, on October 28, 2019, Mr. Turner, the Township, and its Board of Supervisors[18] entered into a storm water management system agreement.[19]

Following the signing of this agreement and the approval of their sub-division plan, the Turners began construction of their planned residential community and to sell individual lots for customers to construct residences.[20] Every "house that was constructed was issued a building permit by the Township and its Board of Supervisors.[21] But this permit was only provided after an alleged inspection by CKCOG and Neitz.[22] CKCOG is a council of government retained by the township

---

[15]  *Id.* ¶ 33.
[16]  *See id.* ¶¶ 88-89. Additionally, it is alleged that Ms. Turner directly profited from the business activities of Mr. Turner. *Id* ¶ 90.
[17]  *Id.* ¶ 34.
[18]  It is alleged that Paul Haines, Todd Oberdorf, and Glenn Troup were supervisors on that board. *Id.* ¶¶ 4-6. This collective trio are referred to as "the Supervisors" in this opinion.
[19]  *Id.* ¶ 35.
[20]  *Id.* ¶¶ 36-37.
[21]  *Id.* ¶ 39.
[22]  *Id.*

to preform inspections for buildings and land development, while Neitz is CKCOG's director.[23] However, the Turners did not adhere to the sub-division plan or the storm water agreement when selling the lots—and the Township, its board of supervisors, CKCOG, and Neitz knew of this failure.[24] This knowledge stemmed from their receipt of numerous complaints from other owners in the development prior to the Plaintiffs' purchase of their property.[25] These owners reported flooding on their own properties that were located in the same flood plain.[26] Additionally, they witnessed the flooding during their own inspections and had knowledge of inspections conducted by the Pennsylvania Department of Environmental Protection or other governmental agencies.[27]

On January 10, 2024, Plaintiffs purchased a property located within the subdivision development.[28] Despite the knowledge of the flooding issues, no one warned or advised Plaintiffs of the risk of flooding problems.[29] Instead, the Turners simply told the Plaintiffs that there was a "bumper to bumper warranty" that would take care of any defects in the home.[30] It was also stated in the contract selling the

---

[23]  *Id.* ¶¶ 7, 17.
[24]  *Id.* ¶¶ 38, 40.
[25]  *See id.* ¶ 91.
[26]  *Id.*
[27]  *Id.* ¶ 92.
[28]  *Id.* ¶ 41.
[29]  *Id.* ¶ 93.
[30]  *Id.* ¶ 154. What the contents of this warranty were, is not clearly pled, but it was allegedly a farce, as the Turners have refused to correct any issues. *See id.* ¶ 175.

property to Plaintiffs that the Turners were required to sell the property in a fashion that was in compliance with the subdivision and water management plans.[31]

The home that was built on the property purchased by Plaintiffs was built by Geiser Enterprises, LLC and Mike Swarey.[32] The real estate brokers responsible for marketing all of the residential lots in the development were The Coup Agency ("Coup") and Villager Realty, Inc. ("Villager"), along with their agents Stephanie Krolikowski and Kelly Seigel.[33] Prior to the property's purchase, Plaintiffs raised concerns about visible flooding, but Coup and Ms. Krolikowski assured them that it was the result of a defective sump pump, while knowing that this was not the true origin of the issue.[34] The true cause of the flooding was the fact that the property rested in a flood plain and the Turners had not properly installed water management systems.[35] Nevertheless, Coup and Ms. Krolikowski pressured Plaintiffs to forego inspections so closing—and subsequently their commissions—would not be delayed.[36] They further did not tell Plaintiffs to obtain an attorney to review

---

[31]  *Id.* ¶ 160.
[32]  *Id.* ¶ 57. It is further alleged that the Turners hired Geiser and Mr. Swarey to be the "exclusive builder of home[s] upon the residential lots." *Id.* ¶ 103.
[33]  *Id.* ¶ 42. Coup, Ms. Krolikowski, Villager, and Ms. Seigel allegedly told Plaintiffs that Mr. Turner was the actual builder of the home on the property and stated that he was a "qualified home builder with sufficient experience to construct homes." *Id.* ¶¶ 54-55.
[34]  *See id.* ¶¶ 44, 47-48, 99.
[35]  *Id.* ¶ 49.
[36]  *Id.* ¶ 50.

amendments to the sale agreement, or the agreement itself, and also informed them that they were the best way to deal with their concerns.[37]

The Township, its board of supervisors, CKCOG, and Neitz were aware that the property that Plaintiffs' purchased would flood "due to the failure of [the Turners] to install the necessary storm water management systems required by the [subdivision plan and storm water agreement]."[38] They knew this because they conducted inspections at other properties within the development before the property was purchased and issued a permit for the home without conducting an inspection.[39] While having this knowledge, they marketed the residential lots that were not fit for the construction of residential properties.[40]

Despite this allowance, the Township and Board did take some action. They required by official vote held at a public meeting that Mr. Turner post a bond to ensure the completion of the storm water management system.[41] However, some member of these defendants told Mr. Turner that he did not need to post the bond or returned the bond to him.[42]

---

[37] *Id.* ¶ 53.

[38] *Id.* ¶ 54.

[39] *See id.* ¶¶ 60, 62. This permit was granted by those who knew there was no inspection conducted and if one had occurred, it would have result in a failure. *Id.* ¶¶ 63-64.

[40] *Id.* ¶¶ 100-101.

[41] *Id.* ¶ 138.

[42] *Id.* ¶¶ 139-40. Plaintiffs make an alternative allegation that such bond may have never been requested through official vote, but that it was decided by the Township and Board to not seek a bond outside of the lawful process—as a favor to Mr. Turner. *See id.* ¶ 141.

After the closing on the property, flooding issues came to pass.[43] On April 29, 2024, Plaintiffs contacted a zoning officer for the Township, Doug Hovey, and requested all documents related to the property.[44] Mr. Hovey responded by saying "[I] ain't got nothing for you, call Rodney Neitz," before he hung up the phone.[45] Plaintiffs took this advice and next contacted Neitz who scheduled an inspection for the property.[46] That inspection was conducted on April 30, 2024, and when Neitz was finished he "admitted that the Premises did not pass inspection and that it should not have passed inspection" due to clear violations of the agreements, various building codes, and zoning ordinances.[47] He would go on to tell Plaintiffs that he didn't have the plans for the parcel because "he was allowed to destroy them 10 days after issuing a certificate of occupancy."[48]

At this point, Neitz did not initiate enforcement action against the Turners, but, rather, attempted to work out a resolution between them and Plaintiffs.[49] Going forward, no enforcement action or any other action to force the Turners to comply with the laws and agreements were undertaken by any of the Defendants.[50] Such

---

[43] *See id.* ¶ 65. These issues seem to be linked to the property not being properly backfilled and sloped towards the home, which nearly ensures that there will be flooding in the basement of the home. *Id.* ¶ 178.

[44] *Id.* ¶ 66.

[45] *Id.* ¶ 67.

[46] *Id.* ¶ 68.

[47] *Id.* ¶¶ 69-71.

[48] *Id.* ¶ 76.

[49] *Id.* ¶ 72.

[50] *Id.* ¶ 73.

enforcement was, in fact, refused.[51] Instead, due to his membership on the Mifflinburg Township Zoning Hearing Board and relationships with the governmental defendant entities and employees, Mr. Turner was granted additional permits so he and his wife could sell other lots.[52] This led to the Turners' profiting from the sale of properties, including that of Plaintiffs, with the knowledge by all that the homes would not pass inspection or abide by applicable zoning codes, state laws, or zoning ordinances.[53] Rather, they would simply flood often.[54] All Defendants relevant to these motions had some level of knowledge that other homes in the development had experienced flooding, that the parcel was not a suitable place for residential homes, and that the development, as a whole, had insufficient storm water systems.[55] This knowledge was hidden from Plaintiffs.[56]

As a result, the Plaintiffs' home has flooded numerous times and suffered significant damage.[57] This has rendered the property worthless because of the defective nature of the home and the fact that they cannot sell it for anything short of a loss due to their requirement to disclose the flooding and any other defects.[58] At

---

[51]  *Id.* ¶ 113.
[52]  *Id.* ¶¶ 74, 79.
[53]  *See id.* ¶¶ 78, 87.
[54]  *See id.* ¶ 87.
[55]  *See id.* ¶¶ 59, 61, 64, 87, 92, 111, 114. There are further allegations that certain defendants had knowledge that the Plaintiffs' property had flooded and "been pumped out" while it was on the market. *Id.* ¶ 187.
[56]  *Id.* ¶ 111.
[57]  *Id.* ¶ 112.
[58]  *See id.* ¶ 112.

every step prior to initiating this litigation, Plaintiffs sought the assistance of the defendants and other Township officials.[59] They were met with hostility and ignorance to their severe flooding issues.[60]

## III.   ANALYSIS

Currently pending before the Court are multiple motions to dismiss filed by different groups of defendants that challenge different counts of the amended complaint.[61] For ease of review, I will analyze each count challenged in the order that they appeared in the amended complaint. Within each count's analysis, I will separately address each issue raised for those claims.

### A. Count I—Violations of the Federal Constitution

The most contentious claim in the complaint comes in Count I. There, Plaintiffs bring a claim for violation of the Fifth and Fourteenth Amendments against the Township, its Board, three Supervisors on that Board, CKCOG, and Neitz.[62] All of those Defendants have challenged various aspects of Count I.[63]

While Plaintiffs lump these defendants together, it is altogether unclear what the origin of these causes of action are.[64] Therefore, it is first necessary to discern

---

[59]   *See id.* ¶ 136.
[60]   *See id.* ¶¶ 135-36.
[61]   One of these motions was filed by a collection of defendants that include Buffalo Township, its Board of Supervisors, Paul Haines, Todd Oberdorf, and Glenn Troup. Doc. 58. As I have previously stated, when I refer to arguments made by this collection of defendants, I will refer to them collectively as "the Township Defendants."
[62]   Doc. 53, at 15.
[63]   *See* Doc. 60, at 4-19; Doc. 64, at 5-17.
[64]   *See generally* Doc. 53, at 15.

what types of claims these actually are.[65] The claims in Count I against the Supervisors on the Board and Neitz are claims directly under 42 U.S.C. § 1983 ("Section 1983"). Meanwhile, the claims against the Township, its Board, and CKCOG can be described as a *Monell* claim, as they are claims against governmental entities.[66] With that bit of housekeeping out of the way, I will now address each of the issues that the defendants of Count I raise.[67] I begin with an analysis of the sufficiency of the actual pleadings in this count. I will then turn to whether these specific defendants are proper to bring this type of Section 1983 claim against—i.e. whether qualified immunity or *Monell* bars this claim being brought against these defendants.

---

[65] In doing so, I am skipping a section here addressing the standing of the Plaintiffs to bring this claim. I am rejecting the argument of the Township Defendants, CKCOG, and Neitz that the Plaintiffs lack standing. However, as will become clear as the opinion progresses, Plaintiffs may not challenge the granting of any permits to the Turners. *See McLaughlin v. Forty Fort Borough*, No. 3:13-CV-16, 2013 WL 4069528, at *11 (M.D. Pa. Aug. 9, 2013). While it may become clear that they lack such standing going forward, at this time, Plaintiffs do, generally, have standing to bring this suit.

[66] *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); *Woods v. Williamsport Area School District et al.*, No. 4:25-CV-01562, 2026 WL 852054, at *4 (M.D. Pa. Mar. 27, 2026) ("and it is well established that the only avenue to sue a municipality under § 1983 is through a Monell claim").

[67] There are a plethora of challenges to Count I included in these three motions. Because of this, there are several arguments set forth that could lead to the dismissal of parts or all of the count. In this analysis, I will address all of the challenges raised and what result each yields. This is done in the hopes that it will focus the contours of the litigation and assist the Plaintiffs in further amending the complaint.

### 1.      Allegations of Conduct Before Plaintiffs Owned the Property

At the outset of this analysis, I want to address what issues in this count the Plaintiffs may argue.[68] It appears Plaintiffs are bringing these Section 1983 suits under a procedural or substantive due process theory.[69] To state a procedural or substantive due process claim under Section 1983, a Plaintiff must allege that they have been deprived of some property interest.[70] The bulk of the allegations in the amended complaint arose prior to the Plaintiffs' ownership of the property in question. Even assuming all of those allegations are true, "Plaintiffs simply did not have a protected property interest in their home" before they owned it.[71] While Plaintiffs argue that a purchaser of the property that was granted a permit would rely on that permit,[72] they cannot claim any violations of their predecessors in interest as their own.[73] Any claims based on allegations of conduct of the relevant defendants[74]

---

[68]   The Defendants argue this point in terms of a standing analysis. *See* Doc. 60, at 9-11; Doc. 64, at 10-12.  Previous cases addressing this issue haven't addressed it as such, so I will not either. But it appears that such an analysis would lead to the exact same result and follow a similar line of logic to the analysis that follows.

[69]   *See* Doc. 53 ¶ 120.

[70]   *See Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir.2011) (discussing how step one of a procedural due process inquiry is asking "whether the plaintiff has a property interest protected by procedural due process"); *R & J Holding Co. v. Redevelopment Auth. of Cnty. of Montgomery*, 165 F. App'x 175, 179 (3d Cir. 2006) ("to state a substantive due process claim in violation of the Fourteenth Amendment as protected by Section 1983, 'a plaintiff must have been deprived of a particular quality of property interest.'").

[71]   *See McLaughlin v. Forty Fort Borough*, No. 3:13-CV-16, 2013 WL 4069528, at *11 (M.D. Pa. Aug. 9, 2013).

[72]   *See* Doc. 72, at 16.

[73]   *See McLaughlin*, 2013 WL 4069528, at *11.

[74]   This is only applicable to the Section 1983 claims of this lawsuit, so when I say "relevant defendants" I am only referencing those named in Count I of the Amended Complaint.

from before the property was owned would result in the claim failing as a matter of law due to the lack of a protected property interest.[75] Therefore, in the analysis of this count that follows, I will disregard any allegations of conduct that occurred prior to the Plaintiffs' ownership of the property.

### 2.    What Constitutional Right Was Violated?

A court analyzing a claim under §1983 must first "identify the exact contours of the underlying right said to have been violated."[76] This means that the first step in this analysis must be answering the question of "whether the plaintiff has alleged a deprivation of a constitutional right at all."[77]

In Plaintiffs' Amended Complaint, they allude to the Due Process Clauses of the Fifth and Fourteenth Amendments to the Federal Constitution.[78] They also mention, with no further explanation, that the "Township … is bound by the United States and the rights of the Plaintiff to Procedural and Substantive Due Process."[79] These concepts or violations are not expounded upon or explained in any way other than cursory allusions to "violating the laws."[80]

---

[75]  *See McLaughlin*, 2013 WL 4069528, at *11.
[76]  *Co. of Sacramento v. Lewis*, 523 U.S. 9 833, 841 n.5 (1998). This first step in the analysis is applicable to both the direct Section 1983 claims against the Supervisors and Neitz and the *Monell* claims against the Township, the Board, and CKCOG because *Monell* claims arise under Section 1983 themselves. *See Monell*, 436 U.S. at 690.
[77]  *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Lewis*, 523 U.S. at 841 n.5).
[78]  *See* Doc. 53, at 15.
[79]  *Id.* ¶ 120.
[80]  *See id.* ¶¶ 124, 131-32, 134.

In Plaintiffs' briefs in opposition to the present motions to dismiss, they acknowledge that the first step in this analysis must be to "to identify the constitutional interest that was allegedly aggrieved."[81] However, they only provide cursory explanations as to what that constitutional interest or right actually is; they say that "they have been deprived of their quiet enjoyment of the Premises"[82] and that they have been "deprived of their substantive due process rights."[83] Based on these elusory statements it appears that the right alleged to have been infringed are procedural or substantive due process rights. I will now address whether either has been sufficiently pled.

### a. Procedural Due Process

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law."[84] "A procedural due process claim is subject to a two-stage inquiry: (1) whether the plaintiff has a property interest protected by procedural due process, and (2) what procedures constitute due process of law."[85] Ultimately, "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie."[86]

---

[81]  *See* Doc. 71, at 11; Doc. 72, at 14.
[82]  *See* Doc. 72, at 13.
[83]  *See* Doc. 71, at 10.
[84]  U.S. Const. amend. XIV, § 1.
[85]  *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011) (internal quotation marks omitted).
[86]  *See Mudric v. Attorney Gen. of U.S.*, 469 F.3d 94, 98 (3d Cir. 2006).

While Plaintiffs alluded to procedural due process in its amended complaint, that basis for Count I has not been advanced in any of the briefing by the Plaintiffs. Further, the bulk of the allegations in the amended complaint arose when "Plaintiffs simply did not have a protected property interest in their home."[87] As I have previously stated, Plaintiffs procedural due process claims for violations arising before they owned the property must fail for lack of a protected property interest.[88]

Plaintiffs also contend that the Township Defendants, CKCOG, and Nietz collectively failed to take any action in regard to continued violations of Township rules, laws and regulations.[89] This inaction allegedly took place after Plaintiffs obtained ownership of the property. However, Plaintiffs have failed to explain how these "Defendants deprived them of any procedural due process rights. Instead, Plaintiffs' complaints can be distilled into one argument that Defendants were indifferent to their complaints. Indifference to complaints alone does not amount to a procedural due process violation. Plaintiffs have not alleged that they were impaired or prevented from voicing their complaints. In fact, the Complaint alleges that Plaintiffs made numerous complaints to Defendants."[90] Because indifference is not sufficient to make out a procedural due process violation and the Court cannot

---

[87] *See McLaughlin v. Forty Fort Borough*, No. 3:13-CV-16, 2013 WL 4069528, at *11 (M.D. Pa. Aug. 9, 2013).
[88] *See id.*
[89] Doc. 53 ¶ 126.
[90] *McLaughlin*, 2013 WL 4069528, at *12.

make out what further due process rights were actually infringed upon, the Court will dismiss Plaintiffs' procedural due process claims contained in Count I.

Plaintiffs will be granted leave to amend to allege any further facts in support of their procedural due process claim for violations occurring after they took ownership of the property.[91] But if this claim is to survive in an amended complaint, "Plaintiffs must show an entitlement to process, not just that there was no process available to them."[92]

### b.    Substantive Due Process

To state a substantive due process claim, a plaintiff must show that "the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience."[93]

"[A] property interest must be constitutionally 'fundamental' in order to implicate due process."[94] While Plaintiffs appear to argue that the relevant property right was related to the issuance of the initial permit for the property, I have already found that they cannot claim any violations of their predecessors in interest as their own.[95] However, they also allege that they have a right to the quiet enjoyment of their property, which subsequently was infringed upon.[96] The Third Circuit has made

---

[91]    *Id.* at *13.
[92]    *Id.*
[93]    *See Chainey v. St.*, 523 F.3d 200, 219 (3d Cir. 2008).
[94]    *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 141 (3d Cir. 2000).
[95]    *See McLaughlin*, 2013 WL 4069528, at *11.
[96]    *See* Doc. 72, at 13.

clear that "a landowner's use and enjoyment of property" is sufficiently fundamental to implicate substantive due process.[97] Therefore, Plaintiffs have sufficiently pled that their particular interest is protected by the substantive due process clause.[98]

However, the Court must also address whether the government's deprivation of the protected interest shocks the conscience.[99] The shocks the conscious test "of course, is not precise, and it also varies depending on the factual context. What is clear is that this test is designed to avoid converting federal courts into super zoning tribunals. What shocks the conscience is only the most egregious official conduct."[100]

Plaintiffs argue that the Third Circuit has said that corruption or self-dealing would qualify as something that shocks the conscious[101] Despite Plaintiffs focusing on the wrong aspects of their claim in advancing this argument,[102] an allegation of self-dealing or corruption is exactly the case here. Plaintiffs provide conclusory

---

[97]  *See Pellegrino Food Prods. Co. v. City of Warren*, 116 F. App'x 346, 347 (3d Cir. 2004).

[98]  The Township Defendants, CKCOG, and Neitz focus on the property interest being tied to permits issued prior to Plaintiffs' purchase of the property. *See* Doc. 71, at 9-13; Doc. 72, at 10-11. However, the Plaintiffs also argue a continuing violation of their rights, in addition to the alleged issuance of the permit to the Turners. *See* Doc. 53 ¶ 126. While they are correct that the Plaintiffs do not have standing to challenge the grant of the initial permit, they do have a fundamental right to quietly enjoy their property. *See McLaughlin*, 2013 WL 4069528, at *11; *Pellegrino*, 116 F. App'x at 347. That is the right that will be analyzed here.

[99]  *See Chainey v. St.*, 523 F.3d 200, 219 (3d Cir. 2008).

[100]  *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004) (internal citations and quotations omitted).

[101]  *Id.*

[102]  Almost the entirety of their amended complaint and briefing of these motions is focused on the issuance of the permit to the Turners.

17

allegations that "[a]ll acts and/or omissions of the individual defendants were done due to their own financial, political and personal interests," and spend pages arguing that the initial granting of the permit was the allegation of corruption.[103] But these are insufficient grounds to base a substantive due process hearing. However, Plaintiffs also allege that there was self-dealing involved in the bond process to ensure completion of the storm water management system.[104] While scarcely discussed throughout the briefing—and even the amended complaint—these allegations are of corruption or self-dealing. Therefore, they are allegations that, if proven true during discovery, would shock the conscience.[105]

As a result, a deprivation of a substantive due process right has been properly pled against some defendants, but not all. It is alleged that the bond vote only involved the Township Defendants, and not CKCOG or Neitz.[106] Nowhere in the complaint are there similar allegations against CKCOG or Neitz that would shock the conscience.[107] Therefore, the substantive due process claim has been pled

---

[103]  *See, e.g.*, Doc 53 ¶ 137; Doc. 71, at 12.

[104]  *See id.* ¶¶ 138-41.

[105]  *See Eichenlaub*, 385 F.3d at 285 ("The facts carried a whiff of self-dealing, since the principal defendant's friends were alleged to have been engaged to perform auction services.").

[106]  Doc. 53 ¶¶ 138-41.

[107]  As with all counts and defendants that have been dismissed without prejudice in this opinion, Plaintiff will have the opportunity to amend its complaint to attempt to re-raise these claims against certain defendants. However, for this claim to survive against CKCOG and Neitz in a future motion to dismiss analysis, the Plaintiffs must make allegations that their conduct shocks the conscious. That conduct must also have occurred when Plaintiffs had a property interest— that is, after they obtained ownership of the property.

sufficiently only against the Township Defendants, and the claim will be dismissed as to CKCOG or Neitz without prejudice for failure to state a claim.

### c.    State-Created Danger Doctrine

As a final note on the bare pleadings of this claim, it does not appear that Plaintiffs seek to utilize the state-created danger doctrine to advance their substantive due process claim. There is no mention of its use in the amended complaint and Plaintiffs only discuss it in their briefs in opposition as a rebuttal to the points raised in the briefs in support.[108] Therefore, this doctrine did not affect the analysis of the motions to dismiss that this opinion addresses.[109]

### 3.    Qualified Immunity

In Count I, Plaintiffs bring a direct Section 1983 claim against both the Supervisors and Neitz for violations of the Fifth and Fourteenth Amendments.[110] "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States."[111] While it does not create new

---

[108]  *See* Doc. 71, at 12-13; Doc. 72, at 15-17.

[109]  In the event Plaintiffs wish to raise a state-created danger claim in a future pleading, the Court wishes to offer a bit of advice. The Third Circuit has "*never* found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised." *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 282 (3d Cir. 2006) (emphasis added). This means that Plaintiffs would need to focus exclusively on what the defendants affirmatively did, not what they failed to do. If Plaintiffs cannot make such affirmative allegations against certain defendants, they should not bring this claim against them, as this Court has no plans to diverge from Third Circuit precedent on this issue.

[110]  See Doc. 53, at 15.

[111]  *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005).

rights, § 1983 "provides a remedy for the violation of a federal constitutional or statutory right" where a plaintiff can demonstrate that "defendants, while acting under color of state law, deprived him of a right secured by the Constitution or the laws of the United States."[112]

As an initial matter, it is necessary to point out that it is not expressly stated in the amended complaint whether the Plaintiffs are suing the Supervisors and Neitz in both their official and individual capacity. This is relevant because "the doctrine of qualified immunity shields officials acting only in their individual capacities."[113] To determine whether a defendant was sued "in her official capacity, personal capacity, or both, we look at the complaints and the 'course of proceedings' to determine the nature of the liability [Plaintiffs] sought to impose."[114] Here, Plaintiffs have sought monetary damages from the state and the individual defendants,[115] the individual defendants' briefs in opposition are littered with references to a defense that is only available to officials sued in their personal capacity—qualified immunity,[116] and the Plaintiffs acknowledged in a brief in opposition that they intended to sue the individual defendants in their individual capacities.[117] All of these

---

[112] *Id.*

[113] *W.B. v. Matula*, 67 F.3d 484, 499 (3d Cir. 1995).

[114] *Garden State Elec. Inspection Servs. Inc. v. Levin*, 144 F. App'x 247, 251 (3d Cir. 2005) (citing *Kentucky v. Graham,* 473 U.S. 159, 167 n.14 (1985)).

[115] *See* Doc. 53, at 18-19.

[116] *See* Doc. 60, at 13-17; Doc. 64, at 7-8.

[117] *See* Doc. 71, at 16.

facts are indicative of the Plaintiffs' intent to sue these defendants in both their individual and official capacities.[118] Therefore, I "will construe Plaintiff[s'] complaint as asserting claims against the[se] Defendants in both their official and individual capacities."[119]

Both the Supervisors and Neitz raise the defense of qualified immunity to this count of the amended complaint.[120] "'[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[121] While immunity questions should be resolved "at the earliest possible stage in litigation,"[122] on a 12(b)(6) motion, qualified immunity should bar the case only where "'immunity is established on the face of the complaint.'"[123] In considering whether a defendant is entitled to qualified immunity, courts analyze (1) whether the plaintiff has shown facts that make out a constitutional rights violation; and if so, (2) whether those rights

---

[118] *See Levin*, 144 F. App'x at 551-52; *Ehrlich v. Alvarez*, No. CV 20-6398, 2021 WL 2284108, at *6 (D.N.J. June 4, 2021), *aff'd*, No. 21-2342, 2022 WL 1487021 (3d Cir. May 11, 2022).

[119] *Ehrlich* 2021 WL 2284108, at *6 (D.N.J. June 4, 2021).

[120] *See* Doc. 60, at 13-17; Doc. 64, at 7-8.

[121] *Betz v. Satteson*, 259 F. Supp. 3d 132, 187 (M.D. Pa. 2017), *aff'd*, 715 F. App'x 213 (3d Cir. 2017).

[122] *Hunger v. Bryant*, 502 U.S. 224, 227 (1991).

[123] *Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)).

were "clearly established" at the time of the incident.[124] But there is no need to handle these two questions in any particular order.[125]

"A legal right is 'clearly established' where 'its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"[126] "'In other words, existing precedent must have placed the statutory or constitutional question beyond debate. This doctrine gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law.'"[127] But there is no requirement that the Plaintiffs "produce a case directly on point."[128]

However, "[w]here a defendant asserts a qualified immunity defense … the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right."[129] As a part of this burden, a plaintiff must "demonstrate[e] that the constitutional right at issue was clearly established at the time of the claimed violation."[130] Plaintiffs have failed to meet this burden.

---

[124] *Highhouse v. Wayne Highlands Sch. Dist.*, 205 F. Supp. 3d 639, 648 (M.D. Pa. 2016).

[125] *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 117 F.4th 503, 515 (3d Cir. 2024).

[126] *Highhouse*, 205 F. Supp. 3d at 649 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

[127] *Id.*

[128] *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 639 (3d Cir. 2015) (internal quotations omitted).

[129] *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997); *see also Randolph-Ali v. Minium*, 793 F. App'x 146, 149 (3d Cir. 2019) (citing *Sherwood*); *Spady*, 800 F.3d at 637 n.4 (citing *Sherwood*).

[130] *Johnson v. Davis*, No. 3:23-CV-762, 2025 WL 1352015, at *6 (M.D. Pa. Jan. 14, 2025) (citing *Davis v. Scherer*, 468 U.S. 183, 197 (1984)).

In their briefs in opposition to the present motions, they have not even attempted to set forth that the rights alleged to have been violated were clearly established.[131] The closest statement they make is by saying that these Defendnats should not be able to claim that they "were unaware that fraudulently issuing permits and refusing to enforce laws for their own financial and political gains is a *violation of the law and ordinances* of the Defendant Township."[132] Saying that a violation of some law or ordinance—or even *the law*—is insufficient to show that the right was "clearly established to a degree of particularity" as is required. [133] Therefore, Plaintiffs have failed to meet their burden to defeat the qualified immunity defenses raised by these Defendants.

As a result, the Supervisors and Neitz will be dismissed without prejudice as defendants to Count I of the amended complaint. This means that Plaintiffs will have the opportunity to amend their complaint to re-raise these claims against these defendants in their individual capacities if they wish to do so. However, if they do, they must bear in mind that the Court will hold Plaintiffs to their "initial burden of showing that the defendant's conduct violated some clearly established statutory or

---

[131] *See* Doc. 71, at 14-15; Doc. 72, at 11-12. Further, they don't make clear what the right they're alleging to have been violated even is.

[132] Doc. 71, at 14 (emphasis added); *see also* Doc. 72, at 12 (emphasis added).

[133] *Beckinger v. Twp. of Elizabeth*, 697 F. Supp. 2d 610, 626 (W.D. Pa. 2010), *aff'd*, 434 F. App'x 164 (3d Cir. 2011); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right.").

constitutional right."[134] If they do not make this clear in their amended complaint or subsequent filings, they should be prepared to have these claims dismissed as to these defendants with prejudice.

### 4. *Monell* Liabilty

Along with the claims against the individual defendants, in Count I of the amended complaint, there are claims for violations of the Fifth and Fourteenth Amendments against three governmental entities: (1) the Township, (2) the Board, and (3) CKCOG.[135] Based on the briefing of the entities and the plaintiffs, it appears undisputed that these three defendants qualify as governmental entities. It is therefore necessary to determine whether these defendants can be properly sued under Section 1983.

To hold a municipality or its entity liable for a deprivation of rights under § 1983, a plaintiff must meet the standards set out in *Monell v. New York Department of Social Services.*[136] *Monell* sets out "that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts

---

[134] *Sherwood v. Mulvihill*, 113 F.3d at 399; *see also Randolph-Ali v. Minium,* 793 F. App'x 146, 149 (3d Cir. 2019) (citing *Sherwood*); *Spady*, 800 F.3d at 637 n.4 (citing *Sherwood*).

[135] *See* Doc. 53, at 15.

[136] 436 U.S. 658, 690 (1978).

24

the injury that the government as an entity is responsible under § 1983."[137] To state a claim under this standard, Plaintiffs must allege that the violation of the plaintiffs rights was caused by either a policy or custom of the municipality.[138] To satisfy the pleading standard, Plaintiffs must "identify a custom or policy, and specify what exactly that custom or policy was."[139] Additionally, the alleged policy, custom, or deficiency must be the proximate cause of the plaintiffs' injuries.[140]

While Plaintiffs have not styled this count as a *Monell* claim, "it is well established that the only avenue to sue a municipality under § 1983 is through *Monell*'s framework."[141] That is exactly what the Plaintiffs have done, and, as a result, the Court will address the claims in Count I against these defendants as attempting to state a *Monell* claim and analyze whether they have properly pled as such.[142]

---

[137] *Id.* at 694.

[138] *Monell*, 436 U.S. at 694; *Berg. v. Cnty. Of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000).

[139] *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).

[140] *G.S. v. Penn-Trafford Sch. Dist.*, No. 20-3281, 2023 WL 4486667, at *4 (3d Cir. July 12, 2023); *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Detention. Ctr.*, 372 F.3d 572, 581 (3d Cir. 2004).

[141] *708-710 Mkt. St, LLC v. Borough of Berwick*, No. 4:25-CV-00597, 2025 WL 3766102, at *3 (M.D. Pa. Dec. 30, 2025); *see also Arcuri v. Cnty. Of Montgomery*, No. 20-5408, 2021 WL 1811576, at *6 n. 11 (E.D. Pa. May 6, 2011) ("Monell provides the only mechanism to state a claim under Section 1983 against municipal entities"); *Monell v. Dept. of Social Servs. Of City of New York*, 436 U.S. 658, 694-95 (1978).

[142] *708-710 Mkt. St, LLC*, 2025 WL 3766102, at *3.

As I have recently explained,[143] courts have begun analyzing four avenues to relief under *Monell*: 1) the existence of a formal policy, officially promulgated or adopted by a municipality; 2) that an official or officials responsible for establishing final policy with respect to the subject matter in question made a deliberate, specific decision; 3) the existence of an unlawful practice by subordinate officials so permanent and well settled as to imply the constructive acquiescence of policymaking officials; or 4) a claim of failure to train or supervise when it amounts to deliberate indifference to the rights of persons with whom municipal employees would come into contact.[144]

While there is no indication in the amended complaint of which avenue Plaintiffs seek to traverse down, their briefs in opposition make clear that they are solely arguing under the second avenue—that officials responsible for establishing

---

[143] *See Woods v. Williamsport Area School District et al.*, No. 4:25-CV-01562, 2026 WL 852054, at *7 (M.D. Pa. Mar. 27, 2026) (Brann, C.J.).

[144] *See, e.g., Nye v. Cumberland Cnty.*, No. 1:14-CV-713, 2016 WL 695109, at *4 (M.D. Pa. Feb. 19, 2016) (Jones, J.); *DeRaffele v. City of Williamsport*, No. 4:15-CV-02186, 2018 WL 2086074, *2 (M.D. Pa. May 4, 2018) (Brann, J.); *Edrei v. City of New York*, 254 F. Supp. 3d 565, 579 (S.D.N.Y 2017); *Deferio v. City of Syracuse*, 770 F. App'x 587, 589-90 (2d Cir. 2019); *Misjuns v. City of Lynchburg*, 139 F.4th 378, 384 (4th Cir. 2025); *Red Zone 12 LLC v. City of Columbus*, 758 F. App'x 508, 515 (6th Cir. 2019).

While the Third Circuit has not explicitly used this framework in so many words, it has upheld cases brought under each of the individual avenues. *See Thomas v. City of Phila.*, 779 F. App'x 99, 102 (3d Cir. 2019) (referencing the "formal policy or informal custom," of avenues one and three); *Porter v. City of Phila*, 975 F.3d 374, 383 (3d Cir. 2020) (noting that *Monell* liability may arrive through a "pertinent decision by an official with decision-making authority on the subject," which is avenue two); *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222-23 (3d Cir. 2014) (noting that failure to train amounting to deliberate indifference is a way to bring a *Monell* claim, which is the fourth avenue).

final policy with respect to the subject matter in question made a deliberate, specific decision.[145] The Third Circuit has stated that "[a] pertinent decision by an official with decision-making authority on the subject constitutes official policy" for the purposes of a *Monell* claim.[146] This means that the first step in this analysis, if to determine whether the conduct alleged was pursuant to an official policy or custom.[147] "If it was, that conduct could support [Plaintiffs'] *Monell* claim. In contrast, if the conduct was simply that of an individual employee who was not acting pursuant to a policy or custom, that conduct cannot give rise to municipal liability under *Monell*."[148]

It is not clear on the face of the amended complaint what the exact policy or custom of these governmental defendants actually was. The Plaintiffs' briefs in opposition to these motions provide a form of clarification when they say that "these Defendants worked in concert with each other to provide Defendant Turner with the necessary permits and approvals for their own financial and political gains."[149] They further say that the actions of "[CK]COG, Neitz and the individual Supervisors took place over the entire course of the construction of the Development."[150] The construction of the sub-division appears to have taken place prior to Plaintiffs'

---

[145]  *See* Doc. 71, at 15-16; Doc. 72, at 9-11.
[146]  *Porter*, 975 F.3d at 383.
[147]  *Id.*
[148]  *Id.*
[149]  Doc. 71, at 15; Doc. 72, at 10.
[150]  Doc. 72, at 11.

27

ownership of the property in question—i.e. before they had any property interest. As I have previously stated, Plaintiffs cannot raise such conduct as having violated any property interest that they did not have.

Plaintiffs do not make any further allegations that there was a policy or custom on the part of the government entities—and if so, what it was. "To satisfy the pleading standard, [Plaintiffs] must identify a custom or policy, and specify what exactly that custom or policy was."[151] The Court, and more importantly the Defendants, are left to wonder what exactly the policy or custom could be.[152] Because Plaintiffs do not adequately make out what the relevant policy/custom actually was, it is impossible to determine whether the conduct by these defendants was pursuant to that inappreciable custom or policy.[153] It was also not argued that there was any conduct by a municipal decisionmaker, as "[t]he complaint alleges nothing more than directives issued *ad hoc* by individual officers, without reference to any formal administrative or policy channels."[154] Due to the lack of an adequately pled custom or policy and link to a municipal decisionmaker, the conduct of these

---

[151] *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008)).

[152] For example, is it the failure of the Township to take action to force a previous owner to do something? Is the custom just knowing that a law is being broken and not acting? Or is it the practice of not ordering others like the Turners to pay some sort of bond? I am not weighing whether the allegations have sufficiently pled any of these theories of a custom/policy. Rather, I am using these examples to showcase some of the various theories Plaintiffs may be arguing. Based on the briefing and complaint, it isn't clear what *exactly* the custom or policy being set forth by the Plaintiffs is. *See id.*

[153] *See Porter v. City of Phila*, 975 F.3d 374, 383 (3d Cir. 2020).

[154] *McTernan*, 564 F.3d at 659.

Defendants cannot "'fairly be said to represent official policy,' warranting the imposition of municipal liability."[155]

Therefore, the claims in Count I against the Township, its Board, and CKCOG will be dismissed without prejudice.[156] Plaintiffs will be given a final chance to remedy the deficiencies in its *Monell* claims, but they should take notice that a failure to provide a more concise, detailed claim that follows the law in this area will lead to dismissal of the claim with prejudice.[157]

### 5.    Punitive Damages in Count I

Defendants CKCOG and Neitz also argue in their motion to dismiss that Plaintiffs' punitive damages request attached to Count I should be dismissed.[158] The request for punitive damages is brought against the Township Defendants, CKCOG, and Neitz.[159] As a preliminary matter, the prayer for punitive damages against the governmental entities—The Township, the Board, and CKCOG—must be dismissed

---

[155] *Id.* (quoting *Monell v. Dep't of Social Servs. of New York City,* 436 U.S. 658, 694 (1978)).

[156] *Id.*

[157] If Plaintiffs seek a reformed version of the *Monell* portions of this count, they should also bear in mind that "[t]he fact that a particular official has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. Rather, the official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Porter*, 975 F.3d at 385. Plaintiff should only re-raise their supervision *Monell* theory if they can make reliable allegations—that they expect to be able to support—that these Defendants were final decisionmakers for the relevant policy and "the conduct was simply that of an individual employee who was not acting pursuant to a policy or custom." *Porter*, 975 F.3d at 383. If they cannot make such allegations, or cannot specifically explain the policy/custom that they are setting forward, they should not re-raise these claims against the governmental entities.

[158] *See* Doc. 59 ¶ 7.

[159] *See* Doc. 53, at 18-19.

with prejudice, as it is well settled that "municipalities, and more broadly, state and local governments entities, are immune from punitive damages under [Section 1983]."[160] Plaintiffs also acknowledge that they could only seek punitive damages against these individual officials in their individual capacities, and not in their official capacities.[161] Therefore, Plaintiffs' claims for punitive damages will also be dismissed with prejudice as to the individual defendants in their official capacity.[162]

The request for punitive damages against the individual defendants is more complicated. "Punitive damages are available…against individual defendants in their individual capacities under § 1983."[163] To state a claim for punitive damages in a Section 1983 claim, a plaintiff must "show either that the defendant acted . . . with actual knowledge that he was violating a right secured by the Constitution and laws, or that the defendant acted with reckless disregard of whether he was thus violating such a right."[164]

Plaintiffs' amended complaint, "fails to allege any ill-intended motivation on behalf of Defendants in their individual capacities."[165] Plaintiffs claim that Neitz,

---

[160] *Doe v. Cnty. of Ctr., PA*, 242 F.3d 437, 455 (3d Cir. 2001).

[161] *See* Doc. 71, at 16.

[162] *See Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985); *Gaus v. Pocono Mountain Reg'l Police Comm'n*, No. CV 3:17-1053, 2017 WL 5070227, at *6 (M.D. Pa. Nov. 3, 2017); *Yelland v. Abington Heights School District*, 2017 WL 529837, at *4 (M.D. Pa. Feb. 9, 2017).

[163] *E.N. v. Susquehanna Twp. Sch. Dist.*, No. 1:09-CV-1727, 2010 WL 4853700 (M.D. Pa. Nov. 23, 2010) (citing *Smith v. Wade,* 461 U.S. 30, 56 (1983)).

[164] *Cochetti v. Desmond*, 572 F.2d 102, 106 (3d Cir. 1978) (internal quotation marks omitted); *see also Binns v. Torsella*, No. 1:20-CV-00925, 2023 WL 4156671, at *7 (M.D. Pa. Feb. 6, 2023).

[165] *Binns*, 2023 WL 4156671, at *7.

and presumably the Supervisors, were acting in only their own interests,[166] but the complaint is devoid of any factual averments to support their allegation other than stating in passing that the Turners were friends of these individual defendants.[167] Further, the only true allegation of their intent comes when Plaintiffs say that "[t]he actions of the Defendants were done with a wanton disregard for the wellbeing of the Plaintiffs and with the direct intent to harm them for the Defendants' own benefit."[168] This is undoubtably a bald assertion or legal conclusion. At the motion to dismiss stage, the Court "need not credit a complaint's bald assertions or legal conclusions."[169] Plaintiffs' allegations in the complaint are "insufficient to allege any malicious or reckless motive on behalf of the Defendants regarding Plaintiffs' property", and they, therefore, have " failed to demonstrate facts that could lead to a finding of punitive damages."[170] Accordingly, Plaintiffs' request for punitive damages will be dismissed without prejudice as to the Supervisors and Neitz.

### 6.    Status of Count I

After that prolix, but necessary, discussion of the various challenges to Count I, this count is left in a straightforward posture. The entirety of the count is dismissed

---

[166]  *See* Doc. 53 ¶ 137; Doc. 71, at 17.
[167]  *See* Doc. 53 ¶¶ 97.
[168]  *See id.* ¶ 145.
[169]  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997).
[170]  *Binns*, 2023 WL 4156671, at *7.

without prejudice.[171] Whether it was due to the claim itself, the governmental status of certain defendants, or the immunity defenses raised by others, the amended complaint is deficient in its allegations to make out claims that can survive these motions to dismiss. However, Plaintiffs will be allowed the opportunity to amend their complaint to reform this count. If they choose to do so, they should deeply consider which avenues of the claim they wish to pursue. I have provided guidance as to where deficiencies lie in the current version of the complaint. If Plaintiffs cannot resolve those deficiencies with allegations that they can reliably make in a reformed version of the complaint, they should not re-raise this claim against the relevant defendants. A reformed count faces dismissal *with prejudice* if the deficiencies are not remedied.

### B. Count II—Pennsylvania's Real Estate Seller Disclosure Law (RESDL)

In a case brimming with disagreement, this count offers the only instance of understanding between these parties. In the Turners' motion to dismiss, they argued that Count II of the amended complaint should be dismissed because the sale of the new construction home in this case was statutorily exempted from the requirements of RESDL.[172] A lengthy analysis of this issue is not necessary, as Plaintiffs concede that "the claim under the Real Estate Disclosure Law is not proper."[173] While more

---

[171] The sole caveat to this is that the punitive damages claim is dismissed with prejudice as to the governmental entities—the Township, the Board, and CKCOG.

[172] *See* Doc. 68, at 7-8.

[173] Doc. 77, at 7.

is not needed to dismiss this claim,[174] as a legal matter, the Turners are correct that the sale of a new construction home is exempted from the RESDL.[175] Therefore, Count II of the amended complaint will be dismissed with prejudice.

However, while Plaintiffs concede that the current version of this count cannot stand, they argue that they should be granted leave to amend the complaint to include a claim under the Unfair Trade Practices and Consumer Protection Law.[176] The Turners oppose such an amendment because they believe it would evidence undue delay, bad faith or dilatory motive.[177] Despite the claims of the Turners and various other defendants, there is no evidence before the Court that Plaintiffs have acted with any bad faith or to delay this litigation. The Rules of Civil Procedure "instructs courts to 'freely give leave [to amend] when justice so requires.'"[178] There is nothing in the record that convinces the Court that it should deviate from this liberal amendment regime.[179] Therefore, Plaintiffs will be granted leave to add a claim under the Unfair Trade Practices and Consumer Protection Law, provided there are facts that can be alleged to support the new claim.

---

[174] *See E.R. v. Stroudsburg Area Sch. Dist.*, 755 F. App'x 166, 169 (3d Cir. 2018) ("The District Court dismissed all claims against them, and the parents concede that was proper. So we will affirm those dismissals").

[175] *See* 68 Pa. Cons. Stat. § 7302(a)(2); *see also Conway v. Cutler Grp., Inc.*, 99 A.3d 67, 74 (Pa. 2014) (Baer, J., concurring) ("the RESDL disclosure requirements do not generally apply to a builder selling a home to the original purchaser").

[176] *See* Doc. 77, at 7-8.

[177] *See* Doc. 80, at 8.

[178] *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017) (quoting Fed. R. Civ. P. 15(a)(2)).

[179] *Id.*

### C. Count III—Breach of Contract

#### 1.   Ms. Turner as a Defendant to Count III

In the Turners' motion to dismiss, they argue that Ms. Turner is not a proper defendant under Count III's breach of contract claim.[180] In the Commonwealth of Pennsylvania, "one cannot be liable for a breach of contract unless one is a party to that contract."[181] Plaintiffs' have sufficiently pled that Ms. Turner was a party to the contract at issue in this count.[182] However, the Turners disagree in their motion to dismiss and attached the agreement of sale of the property in their reply brief to advance this argument.[183] Therefore, a determination of whether Ms. Turner is a proper defendant under this count turns on whether the Court may consider the agreement of sale attached to the Turners' reply brief.

When deciding a motion to dismiss, a court generally considers only the allegations in the complaint, exhibits attached thereto, and facts of public record.[184] Normally, to consider anything beyond those sources, a motion to dismiss must be converted to a motion for summary judgment.[185] But consideration of materials outside the complaint is not completely barred on a 12(b)(6) motion.[186] Courts may

---

[180]   *See* Doc. 68, at 8-10.
[181]   *Electron Energy Corp. v. Short,* 597 A.2d 175, 177 (Pa. Super. Ct. 1991) (citing *Viso v. Warner,* 369 A.2d 1185, 1188 (Pa.1977)); *see also Fish Net, Inc. v. ProfitCenter Software, Inc.*, No. 09-5466, 2013 WL 5635992, at *4 (E.D. Pa. Oct. 15, 2013).
[182]   *See* Doc. 53 ¶ 159.
[183]   *See* Doc. 67 ¶ 9; Doc. 80, Ex. A.
[184]   *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).
[185]   *See* Fed. R. Civ. P. 12(d).
[186]   *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

consider any documents that are integral or explicitly relied upon in the complaint.[187]

"However, before materials outside the record may become the basis for a dismissal,

several conditions must be met."[188] "For example, even if a document is 'integral'

to the complaint, it must be clear on the record that no dispute exists regarding the

authenticity or accuracy of the document."[189] It must also be clear that there exists

no material disputed issues of fact regarding the relevance of the document.[190] In this

matter, this Court finds that these conditions have been met, and will consequently

consider Defendants' attachment.[191]

Neither the agreement of sale, nor any of the attachments to it, contain any

mention of Ms. Turner and only lists Mr. Turner as the seller of the property.[192] As

a result, Ms. Turner was not a party to this contract. Because "one cannot be liable

---

[187] *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

[188] *Faulkner*, 463 F.3d at 134.

[189] *Id.*; *see also Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).

[190] *Faulkner*, 463 F.3d at 134.

[191] It should be acknowledged that the sale agreement was only attached to the Turners' reply brief. Nevertheless, it is clear that this contract is necessarily relevant to the breach of contract claim that alleges a violation of it, as it would defy logic to say that the contract that serves as a basis for a breach of contract claim was not relevant. *See* Doc. 53 ¶ 159. Finally, on April 2, 2026, this Court issued an order requiring the Plaintiffs to provide any objections to the consideration to the accuracy of this contract. *See* Doc. 81. In their response, Plaintiffs acknowledged that the sales agreement is "authentic," but also requested that four additional addendums to that contract should also be considered to ensure completeness. *See* Doc. 82. Those addendums do not affect the authenticity of the agreement. Therefore, I will deem there to be no dispute to the accuracy or authenticity of the document.

[192] *See* Doc. 80, Ex. A.

for a breach of contract unless one is a party to that contract," [193] this also means that the allegations in the amended complaint do not "plausibly give rise to an entitlement to relief" against her.[194] Therefore, Ms. Turner will be dismissed with prejudice as a defendant to Count III of the amended complaint.[195]

### D. Count IV—Fraud

Count IV of the amended complaint is a state-law fraud claim brought against both of the Turners, along with other defendants.[196] The Turners allege that "the averments "in Count IV fail as a matter of law as to both Rachael and Timothy because they are nothing more than generalized legal conclusions that fail to identify a single specific representation made by either Rachael or Timothy."[197]

---

[193] *Electron Energy Corp. v. Short,* 597 A.2d 175, 177 (Pa. Super. Ct. 1991) (citing *Viso v. Warner,* 369 A.2d 1185, 1188 (Pa.1977)); *see also Fish Net, Inc. v. ProfitCenter Software, Inc.*, No. 09-5466, 2013 WL 5635992, at *4 (E.D. Pa. Oct. 15, 2013).

[194] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

[195] Additionally, the Turners argue that none of the claims in the amended complaint should apply to Ms. Turner—and should therefore be dismissed—because she "was not involved in the ownership, development, or sale of [the relevant] Property to Plaintiffs." Doc. 68, at 4. As I have already dismissed Count II and Ms. Turner as a defendant under Count II, this argument only relates to the pending counts alleged against Ms. Turner—Count IV and VI. The sufficiency of Counts IV and VI will be addressed in further sections of this opinion. However, I will note now that none of these additional counts have any requirement that a defendant be a party to a contract. Additionally, Plaintiffs have pled that Ms. Turner was involved in the development of the property and its management, independent of her husband's ownership of the property. *See* Doc. 53 ¶¶ 31-32, 37-38, 88-89. Ms. Turner is also alleged to have directly profited from the business activities of Mr. Turner. *Id* ¶ 90. While Plaintiffs should be more explicit about Ms. Turners' direct involvement in a future amended complaint, "[t]he proper place to resolve factual disputes is not on a motion to dismiss." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022). This objection to Ms. Turner as a defendant is entirely based on an alternative set of facts than those set forth in the amended complaint. As such, this argument is not proper under a motion to dismiss and is denied.

[196] Doc. 53, at 22.

[197] Doc. 68, at 11.

"Common law fraud under Pennsylvania law requires the plaintiff to show: '(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.'"[198] Additionally, a plaintiff in a federal case must also comply with Rule 9(b) of the Federal Rules of Civil Procedure.[199] This means that a plaintiff "must allege 'the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation' and must state 'the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged.'"[200] This "essentially requires Plaintiffs to allege the who, what, when, where, and how elements to state a claim arising in fraud."[201]

"Despite Rule 9(b)'s stringent requirements, … [the United States Court of Appeals for the Third Circuit] has stated that 'courts should be sensitive to the fact that application of the Rule prior to discovery may permit sophisticated defrauders

---

[198] *Woolley v. Groft*, 653 F. Supp. 3d 171, 185 (M.D. Pa. 2023) (quoting *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994)).
[199] *See Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 778 (3d Cir. 2018).
[200] *Id.* (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).
[201] *Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698, 703 (D.N.J. 2013) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997)).

to successfully conceal the details of their fraud.'"[202] "Accordingly, the normally rigorous particularity rule has been relaxed somewhat where the factual information is peculiarly within the defendant's knowledge or control."[203] "But even under a relaxed application of Rule 9(b), boilerplate and conclusory allegations will not suffice."[204]

Here, Plaintiffs' Amended Complaint fails to meet the even watered down Rule 9(b) standard. Starting from the beginning, Plaintiffs do adequately plead the what and when of the first fraud element of representation.[205] They allege that various misrepresentations were made concerning, among other things,[206] the proper construction of the home, the stormwater system, and even describing a warranty.[207] It is also alleged that these statements were made "directly to Plaintiffs from November, 2023, up to and after closing which occurred on January 12, 2024."[208] These factual allegations are sufficient to "give[ ] defendants notice of" these aspects of the first element.[209]

---

[202] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) (quoting (citing *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 284 (3d Cir. 1992)).

[203] *Id.* (citing *Shaprio*, 964 F.2d at 285).

[204] *Id.*

[205] *See id.*

[206] Many of these other alleged misrepresentations are laid out in Plaintiffs' Brief in Opposition to the Turners' motion to dismiss. *See* Doc. 77, at 9.

[207] *See, e.g.*, Doc. 53 ¶¶ 170, 176, 177.

[208] *Id.* ¶ 179.

[209] *See In re Burlington*, 114 F.3d at 1418.

However, Rule 9(b) requires that the "who" of each element be sufficiently pled, as well.[210] Plaintiffs have failed to adequately plead this aspect of the first element of their fraud claim. In their amended complaint they repeatedly state that the above representations were made by "[t]he Defendants."[211] In fact, the only instances of Plaintiffs alleging that specific defendants made representations are in regard to defendants Seigel and Swarey.[212] There is simply no reference to specific representations made by either of the Turners outside of vague references to withholdings or statements made by "[t]he Defendants."[213] This falls well short of setting out the "who" element of the of the fraud claim,[214] and fail the required pleading standard for fraud under Rule 9(b) for the Turners as defendants.[215] Therefore, fraud claim under Count IV of the amended complaint will be dismissed without prejudice as to Mr. and Ms. Turner.[216]

---

[210] *Id.* at 1422.

[211] *See, e.g.*, Doc. 53 ¶¶ 175, 178, 180, 181.

[212] *See* Doc. 53 ¶¶ 186, 188-89.

[213] *See, e.g.*, Doc. 53 ¶¶ 175, 178, 180, 181.

[214] *See Frederico v. Home Depot,* 507 F.3d 188, 201 (3d Cir. 2007).

[215] *See Klein v. Gen. Nutrition Companies, Inc.*, 186 F.3d 338, 345 (3d Cir. 1999) ("Fed.R.Civ.P. 9(b) requires, at a minimum, that the plaintiff identify the speaker of allegedly fraudulent statements") (citing *In re Time Warner Inc. Securities Litigation,* 9 F.3d 259, 265 (2d Cir.1993)).

[216] This claim is dismissed without prejudice, and as a result Plaintiff will be granted leave to amend this count, because "[i]n most instances where plaintiffs fail to plead fraud with particularity—and especially in cases where plaintiffs may be able to supplement their complaints with additional factual content after discovery—district courts should dismiss the fraud claim with leave to amend the deficient pleading." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 779 (3d Cir. 2018) (internal quotation marks omitted). Contrary to the Turners' assertions, the Court believes that the Plaintiffs have not evidenced bad faith or other dilatory motives or repeated failure to cure deficiencies in their two sole attempts to craft this claim of the complaint and there is no substantial risk of prejudice to the defendants. *See Mullin v.*

## E. Count VI—Civil Conspiracy

Count VI of the amended complaint includes a civil conspiracy claim filed against all of the defendants in this lawsuit.[217] All three motions to dismiss challenge the adequacy of this claim.[218] This count does not make clear whether it attempts to state a claim under Section 1983 or under Pennsylvania state law.[219] But the Plaintiffs' response to the Turners' motion to dismiss suggests that it is intended to be a claim under the state cause of action.[220] Because Plaintiffs' brief in opposition "argues only state law, the court assumes that they are asserting a state law civil conspiracy claim."[221]

---

*Balicki*, 875 F.3d 140, 149-50 (3d Cir. 2017). As a result, the Court does not believe there is any reason to deny leave to amend on this count. *See id.*

[217] Doc. 53, at 28.

[218] *See* Doc. 58 ¶ 19; Doc. 59 ¶ 8; Doc. 67 ¶ 10.

[219] *See* Doc. 53, at 28-29. This point is exacerbated by the fact that one set of defendants has argued that Plaintiffs have failed to state a conspiracy claim under 1983, while two other sets of Defendants focus on the state law cause of action framework. *Compare* Doc. 64, at 17-19, *with* Doc. 60, at 19-20, *and* Doc. 68, at 13-14. In an amended version of this complaint, Plaintiffs must clarify exactly under what statute or cause of action they are bringing this claim; if they do not, they risk dismissal of the claim with prejudice. *See Dec v. Cnty. of Butler*, No. 24-1165, 2024 WL 3342436, at *1-2 (3d Cir. July 9, 2024).

[220] *See* Doc. 77, at 10 (citing *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003), a Third Circuit case that analyzes the Pennsylvania civil conspiracy cause of action).

[221] *Keating v. Bucks Cnty. Water & Sewer Auth.*, No. CIV. A. 99-1584, 2000 WL 1888770, at *16 (E.D. Pa. Dec. 29, 2000). However, I would like to note that if Plaintiff did intend to bring a conspiracy claim under Section 1983, then it would be dismissed for failure to state a claim. The reason for this is that Plaintiffs have failed to plead any facts showing that there was an actual agreement between the parties. *See Watson v. Sec'y Pennsylvania Dep't of Corr.*, 436 F. App'x 131, 137 (3d Cir. 2011). What he does plead are legal conclusions and bald allegations that various parties "conspired" together. *See, e.g.*, Doc. 53 ¶¶ 86, 97, 122. "As the linchpin for conspiracy is agreement, concerted action, without more, cannot suffice to state a conspiracy claim." *Watson*, 436 F. App'x at 137 (internal citations and quotation marks omitted). Without any facts pled alleging an agreement to violate the Plaintiffs' rights, a

"In Pennsylvania, 'to state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage.'"[222] It is also required to be made out that there was malice present, "defined as an intent to injure."[223] Additionally, "[a]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act."[224] If the "underlying claims [that are the basis of the conspiracy count] will be dismissed, a civil conspiracy claim based on them cannot stand." [225]

Plaintiffs' civil conspiracy claim fails to meet the requirements to survive a motion to dismiss. Given that I have dismissed the underlying fraud claim that serves as the basis of the civil conspiracy, this is the result that I must reach.[226] However, there is a further reason that the claim will be dismissed. Despite Plaintiffs arguments to the contrary,[227] every statement regarding the civil conspiracy claim is

---

conspiracy claim under Section 1983 would fail. *See id.*; *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018).

[222] *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003).

[223] *Deitrick v. Costa*, No. 4:06-CV-01556, 2015 WL 1606641, at *13 (M.D. Pa. Apr. 9, 2015) (citing *Reading Radio, Inc. v. Fink,* 833 A.2d 199, 212 (Pa. Super. 2003)).

[224] *Id.* (citing *Goldstein v. Phillip Morris, Inc.,* 854 A.2d 585, 590 (Pa. Super. 2004)).

[225] *Slater v. Susquehanna Cnty.*, 613 F. Supp. 2d 653, 668 (M.D. Pa. 2009), *aff'd*, 465 F. App'x 132 (3d Cir. 2012); *see also Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 446 (3d Cir. 2000).

[226] *See* Doc. 53 ¶ 209; *Deitrick*, 2015 WL 1606641, at *13.

[227] *See* Doc. 71, at 17.

41

either a bald assertion or legal conclusion.[228] As I have said several times in this opinion, at the motion to dismiss stage, the Court "need not credit a complaint's bald assertions or legal conclusions."[229] As a result, "these broad and conclusory allegations simply lack the factual support necessary to state a claim for civil conspiracy," and Count VI of the amended complaint will be dismissed without prejudice.[230]

This means that parts of the three motions to dismiss discussing Count VI will be granted.[231] However, I cannot agree with the Turners' assertions that there has been any evidence of bad faith or failure to cure deficiencies evidenced by the Plaintiffs, as this is the first time that that Court has pointed out any of these deficiencies.[232] Therefore, I will allow Plaintiffs to revise this claim in any future amended version of the complaint.[233]

---

[228] *See* Doc. 53 ¶¶ 78, 87, 97, 122-23, 205-09.

[229] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997).

[230] *Egli v. Strimel*, No. CV 14-6204, 2015 WL 5093048, at * 6-7 (E.D. Pa. Aug. 28, 2015); *see also Reed v. Harpster*, 506 Fed. App'x 109, 111 (3d Cir. 2012) ("allegations of conspiracy must be grounded firmly in facts; they cannot be conclusory nor can they hinge on bare suspicions and foundationless speculation"); *Kost v. Dep't of Pub. Welfare of Pa.*, 2009 WL 466166, *4 (E.D. Pa. Feb. 24, 2009) ("plaintiff must make specific factual allegations of a combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events") (citation and internal quotations omitted).

[231] *See* Doc. 58 ¶ 19; Doc. 59 ¶ 8; Doc. 67 ¶ 10.

[232] *See* Doc. 80, at 7.

[233] The Plaintiffs should be on notice that there are severe deficiencies with this count in its current form. If Plaintiffs cannot make *factual* allegations to sufficiently flesh out this claim against each and every Defendant, they should strongly consider not re-raising the claim against certain defendants or in any form.

## F. Count VIII— Mandamus

The final count of the amended complaint challenged in these motions is Count VIII—Plaintiffs mandamus action against the Township and its Board.[234] In this claim, Plaintiffs seek to have these defendants "institute enforcement action against Turner for failure to comply with the Plans, SALDO, Storm Water laws and [the]Storm Water Agreement."[235] They also seek to compel these defendants "to enforce the Storm Water Agreement and utilize the Bond to construct the storm water system."[236] In sum, Plaintiffs seek to utilize this mandamus count to do two things, (1) initiate enforcement proceedings and (2) enforce the storm water agreement between the Turners and the Township. Both are improper remedies under a mandamus action.

"A mandamus action lies only to compel official performance of a ministerial act or mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and a lack of any other adequate and appropriate remedy at law"[237] However, "the… decision on whether or not to undertake an enforcement action requires the exercise of a type of discretion that cannot be compelled by a writ of mandamus."[238] This is because, "[t]he exercise of

---

[234] Doc. 53, at 31.
[235] *Id.* at 32. While this is never explained in the amended complaint or briefing by the Plaintiff, it is believed that "SALDO" stands for the Subdivision and Land Development Ordinance.
[236] *Id.*
[237] *Crozer Chester Med. Ctr. v. Dep't of Lab. & Indus.*, 22 A.3d 189, 193 (Pa. 2011).
[238] *Sinkiewicz v. Susquehanna Cnty. Bd. of Comm'rs*, 131 A.3d 541, 548 (Pa. Commw. Ct. 2015).

an agency's prosecutorial discretion is not subject to judicial review, any more than the discretion of a criminal prosecutor not to prosecute a particular case can be reviewed by courts."[239] Another way to frame this is by saying that there was no duty to act by the defendants, because the action is within their discretion and is not mandatory. Because there was no mandatory duty to initiate enforcement proceedings, a mandamus action would be futile here.[240]

The Plaintiffs desire to enforce the storm water agreement fairs no better. The agreement and any further bond agreement based on it are by all accounts contractual in nature. Mandamus cannot lie to compel obligations arising solely by contract.[241] Rather, "the use of mandamus is limited to the enforcement of rights and duties imposed by law, and, if the right or duty rests wholly on contract, the writ will not issue to enforce it."[242] Therefore, the mandamus action is also futile to enforce the contractual obligations of the storm water agreement.

Because these avenues are the only pursued by Plaintiffs in this claim and they have been shown to be insufficient, the mandamus claim in Count VIII is dismissed with prejudice.[243]

---

[239] *Id.*

[240] *Crozer*, 22 A.3d at 193.

[241] *Kegerise v. Delgrande*, 183 A.3d 997, 1002 (Pa. 2018).

[242] *Kaelin v. Univ. of Pittsburgh*, 218 A.2d 798, 801 (Pa. 1966).

[243] A claim is "futile" if even, as amended, it would fail to state a claim upon which relief could be granted. *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). Although there is a "liberal pleading philosophy of the federal rules" no amendment will be permitted because another opportunity to plead a case would be futile. *See Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008). Plaintiffs have proffered no justification for a mandamus claim that

## IV.    CONCLUSION

The three motions to dismiss pursuant to Rule 12(b)(6) are granted in part and denied in part. Plaintiff is granted leave to amend the specific sections that have been noted in this opinion. "The Federal Rules of Civil Procedure do not address the situation in which a deficiency in a complaint could be cured by amendment but leave to amend is not sought."[244] But the law in the Third Circuit is clear that leave to amend should be "freely given" regardless of whether leave is specifically requested.[245]

As such, Plaintiffs will be given twenty-eight days from today's date to file an amended complaint.  If no amended complaint is filed, the action will be subject to dismissal with prejudice.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

is based on a mandatory duty of the Township or Board and is not based on a contract. Given that these bases for the claim are insufficient, I now find that this claim is futile and I will not allow leave to amend this claim.

[244] *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).

[245] *Id.* (quoting Fed. R. Civ. P. 15(a)).